Manfred Muecke, CA State Bar No. 222893
mmuecke@manfredapc.com
**MANFRED, APC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Facsimile: (619) 550-4006

*Additional Attorneys Listed on Signature Page*

Attorneys for Plaintiff Sarah Blain
and the putative class

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SARAH BLAIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Defendant. | **Case No.:** '22CV0970 BEN RBB<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**(1) Breach of Contract**<br><br>**(2) Unjust Enrichment**<br><br>**(3) Violation of California Business and Professions Code § 17200** *et seq.* |

CLASS ACTION COMPLAINT

# CLASS ACTION COMPLAINT

Plaintiff Sarah Blain ("Plaintiff Blain" or "Plaintiff"), by and through her attorneys and on behalf of herself and all others similarly situated, hereby submits this Class Action Complaint against Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This case is filed to end Liberty Mutual's practice of unfairly profiting from the global COVID-19 pandemic.

2. Beginning in March 2020, states across the country, including California, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3. While many companies, industries, and individuals have suffered financially as a result of the COVID-19 pandemic, auto insurers like Liberty Mutual have scored a windfall. Not surprisingly, as a result of state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. This decrease in driving and accidents has significantly reduced the number of claims that auto insurers like Liberty Mutual have paid, resulting in a drastic and unfair increase in Liberty Mutual's profits at the expense of its customers.

4. One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April of 2020.

5. Despite full knowledge of these facts, Liberty Mutual continued to charge and collect excessive premiums throughout 2020 and 2021 and has failed to issue adequate refunds. Liberty Mutual's refund program was inadequate to

compensate its customers for overpayments resulting from COVID-19. Despite having contractual discretion to adjust the policy premium, Liberty Mutual's refund program applied only a 15% refund to policyholders in April and May 2020, followed by a paltry 5% refund covering twelve months spanning from June 2020 through May 2021.

6. To remedy Defendants' unlawful conduct, Plaintiff bring this class action alleging violations of California state law. Plaintiff seeks disgorgement of the ill-gotten gains obtained by Liberty Mutual to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## JURISDICTION

7. This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

## VENUE

8. Venue is proper in the Southern District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

9. Defendant Liberty Mutual Fire Insurance Company is a Massachusetts corporation with a principal place of business in Boston, Massachusetts. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies during the relevant time period at issue.

10. Defendant issued personal auto, motorcycle, and/or RV insurance policies to Plaintiff and the members of the putative class during the relevant time period.

11. On April 7, 2020, Liberty Mutual announced it would be returning a portion of premiums in the form of refunds via check or to the method of payment utilized by the policyholder.[1] These refunds were uniformly developed by Liberty Mutual and were applied in identical fashion by Defendant to its policyholders. Defendant applied the Liberty Mutual refund program and the unfair practices at issue to California policyholders during the relevant time period.

12. Plaintiff Blain is an adult resident of San Diego, California. Plaintiff has held personal auto insurance policies purchased from Liberty Mutual during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the credit given by Liberty Mutual is wholly inadequate to compensate Plaintiff for her overpayments on these policies.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.   The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

13. In late December 2019, a novel coronavirus known as SARS-CoV-2 began to spread around the globe. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States.

14. By mid-March, there were thousands of confirmed cases of COVID-19 across the United States and hundreds in the State of California alone.

15. Like many states around the country, California responded to the worsening COVID-19 crisis with measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

16. On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19. In the following weeks, the

---

[1] https://www.libertymutualgroup.com/about-lm/news/articles/liberty-mutual-insurance-announces-personal-auto-customer-relief-refund-help-customers-during-pandemic (*last accessed* July 1, 2022)

state rolled out a series of social distancing measures, including, for example, recommendations that older adults and those with elevated risk should self-isolate.

17. On March 19, 2020, Governor Newsom instituted a statewide stay-at-home order,[2] making California among the first states to establish such an order. With some exceptions, the order mandated "all individuals living in the State of California to stay home."[3]

18. In the time since Governor Newsom first instituted the stay-at-home order, California's progress toward reopening has been halting, and additional stay-at-home orders were imposed in response to the spread of COVID cases.

**B.    Liberty Mutual Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

19. Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry— has secured a windfall from COVID-19-related restrictions. The reason is simple. As one report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[4]

---

[2] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (*last accessed* July 1, 2022)
[3] *Id.* ¶ 1.
[4] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf (*last accessed* July 1, 2022)

4
CLASS ACTION COMPLAINT

20. Beginning in mid-March of 2020, the number of miles driven by individuals dropped dramatically because of COVID-19. This includes the State of California. Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[5]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -53% |
| March 22 - March 28 | -72% |
| March 29 - April 4 | -74% |
| April 5 - April 11 | -77% |
| April 12 - April 18 | -74% |
| April 19 - April 25 | -71% |

Upon information and belief, decreases in pre-COVID miles traveled continued through the end of 2020 and well into 2021.[6]

21. Automobile accidents have also decreased. According to the Road Ecology Center at the University of California, Davis, traffic collisions, including those involving injuries or fatalities, dropped by roughly half after California instituted its stay-at-home order.[7]

---

[5] *See id.* at 6-8.
[6] *See id.* at 2; *see also* Center for Economic Justice & Consumer Federation of America, Auto Insurance Refunds Needed as New Data Show Crashes Remain Well Below Normal Due to Pandemic (Dec. 22, 2020), https://consumerfed.org/press_release/auto-insurance-refunds-needed-as-new-data-show-crashes-remain-well-below-normal-due-to-pandemic-23-fewer-accidents-in-september-and-october/ (*last accessed* July 1, 2022)
[7] Fraser Shilling and David Waetjen, *Special Report: Impact of COVID19 Mitigation on Numbers and Costs of California Traffic Crashes*, Road Ecology Center, UC Davis, Apr. 1, 2020 (updated Apr. 15, 2020), https://roadecology.ucdavis.edu/sites/g/files/dgvnsk8611/files/files/COVID_CHIPs_Impacts_report2.pdf (*last accessed* July 1, 2022)

22. This dramatic decrease in driving and auto accidents allowed auto insurance companies, including Liberty Mutual, to unfairly profit at the expense of their policyholders during the COVID-19 pandemic. Auto insurance rates, including those set by Liberty Mutual, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policyholders whose premium was based on now-overstated expectation about insurance claims.[8]

23. The excessive premiums collected and not refunded by Liberty Mutual during the COVID-19 pandemic have led to a substantial windfall.

**C. Liberty Mutual Elected Not To Exercise Its Contractual Discretion To Adjust The Applicable Policy Premium**

24. Liberty Mutual is conferred ongoing explicit contractual discretion to adjust policy premiums as set forth in pertinent language in its standard auto insurance policies issued to Plaintiff and policyholders in California.

25. Indeed, the applicable clause under the "CHANGES" provision in Defendant's LibertyGuard Auto Policy attached herein as Exhibit A clearly and unmistakably grants Liberty Mutual discretion to change the policy premium.

---

[8] CEJ/CFA Report, *supra*, at 4.

*If there is a change to the information used to develop the policy premium, we may adjust your premium.*[9]

26. The scope of Liberty Mutual's discretion to change the premium was crafted by Liberty Mutual to extend beyond circumstances specific to the policyholder. *Id.*

27. Despite being well aware of the drastic change in driver volume and traffic conditions that substantially altered the risk incurred by Liberty Mutual and related development of policy premiums charged to Plaintiff and other policyholders, Liberty Mutual elected to shortchange its policyholders in the amount of refunds that it issued to them.

**D.   Liberty Mutual Has Failed to Give Adequate Refunds to Plaintiff and Other Policyholders in California**

28. According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including Liberty Mutual, just for the time period from mid-March through the end of April 2020.[10]

29. At all relevant times, Liberty Mutual has been aware of the need to refund premiums in order to correct the unfair windfall it gained from policyholders in California as a result of the COVID-19 crisis. Liberty Mutual has likewise been aware of its excessive profits. Despite this, Liberty Mutual has failed to adequately return these profits to its customers.

30. In April 2020, Liberty Mutual announced its plans to issue a refund to its auto insurance policyholders. Under the program, Liberty Mutual provided a refund of approximately 15% to personal auto insurance customers for two

---

[9] See Exhibit A LibertyGuard Auto Policy, Part F, Subsection B at pg. 9
[10] CEJ/CFA Report, *supra*, at 12-13.

7
CLASS ACTION COMPLAINT

months' worth of premiums.[11]

31. Following the issuance of its initial 15% premium refund, Liberty Mutual subsequently issued premium refund in the amount of 5% of twelve month's premium for policyholders who held an active policy from June 2020 through May 2021.[12]

32. But Liberty Mutual's premium refund program has been inadequate to compensate its customers for the unfair windfall that the company has obtained as a result of COVID-19. The credits were nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund for just the first the first two months of the pandemic alone.

33. Plaintiff Blain has been a customer of Liberty Mutual at all relevant times. Plaintiff is a current Liberty Mutual policyholder.

34. Under Liberty Mutual's publicly announced premium refund program, Plaintiff received a premium refund in 2020 and 2021. These premium refunds were inadequate to compensate Plaintiff for the unfair windfall that the company has obtained as a result of COVID-19.

35. Under its insurance policies, including the policies of Plaintiff and

---

[11] *See* "CA COVID-19 Premium Refund Report Submissions - Company I to N," California Department of Insurance, at "Bulletin 2020-3 Explanatory Memorandum" for Liberty Mutual Fire Insurance Company – NAIC #23035; *Available at*: www.insurance.ca.gov/0250-insurers/0300-insurers/0100-applications/rsb-forms/2020/2020-3-submissions/loader.cfm?csModule=security/getfile&amp;pageid=316512 (*last accessed* July 1, 2022)

[12] *See* "CA COVID-19 Premium Refund Report Submissions - Company I to N," California Department of Insurance, at "Bulletin 2021-3 Supp Memo" for Liberty Mutual Fire Insurance Company – NAIC #23035; *Available at*: www.insurance.ca.gov/0250-insurers/0300-insurers/0100-applications/rsb-forms/2020/2021-03-submissions/loader.cfm?csModule=security/getfile&amp;pageid=325773 (*last accessed* July 1, 2022)

the members of the putative class, Liberty Mutual has the discretion to make voluntary downward premium adjustments based on an insured's changed circumstances.

36. Liberty Mutual improperly exercised that discretion by failing to issue refunds of the now-excessive premiums during changed circumstances, when it should have instead used its discretion, in good faith, to make appropriate adjustments.

37. Plaintiff's policies described above were in effect during the time period in which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and stay-at-home orders (along with other measures and conditions) caused a widespread and dramatic decrease in automobile use and traffic. Despite this, Liberty Mutual gave Plaintiff inadequate refunds on her 2020 and 2021 premiums.

38. Liberty Mutual was aware that the shelter-in-place orders, social distancing guidelines, and resulting reduction in driving resulted in premiums that were not based on an accurate assessment of risk. Yet Liberty Mutual continued to collect and retain excessive, unfair premiums from Plaintiff and others.

39. In 1988, California voters approved Proposition 103 to further establish the public policy of the state and to "protect consumers from arbitrary insurance . . . practices, to encourage a competitive insurance marketplace . . . and to ensure that insurance is fair, available, and affordable to all Californians." The people of the state declared with Proposition 103 that "[t]his law shall be liberally construed and applied in order to fully promote its underlying purposes . . .."

40. Liberty Mutual's collection and/or retention of such excessive premiums violates California public policy and contravenes Proposition 103's mandate to protect consumers from arbitrary insurance practices, to encourage a competitive insurance marketplace, and to ensure that insurance is fair, available, and affordable for all Californians.

41. Upon information and belief, thousands of other policyholders in California have been injured by Liberty Mutual's policy and practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic.

42. Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of Liberty Mutual.

## CLASS ACTION ALLEGATIONS

43. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

44. The proposed class is defined as follows:

> All California residents who purchased personal automobile insurance from Liberty Mutual covering any portion of the time period from March 1, 2020 to the present.

45. The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from Liberty Mutual's records.

46. There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

47. The common questions of law and fact include, but are not limited to:

   a. Whether Liberty Mutual has a common policy or practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic;

   b. Whether Liberty Mutual's refund program is inadequate;

   c. Whether Liberty Mutual violated the covenant of good faith and fair dealing;

d.  Whether Liberty Mutual was unjustly enriched as a result of its failure to provide adequate refunds to its customers;

e.  Whether Liberty Mutual's failure to provide adequate refunds to its customers is unfair;

f.  Whether Liberty Mutual has violated California consumer protection laws through its failure to provide adequate refunds to its customers and its failure to disclose the inadequacy of its refunds; and

g.  the proper measure and calculation of damages.

48. The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether Liberty Mutual is liable for the alleged legal violations.

49. Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

50. Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

51. Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Liberty Mutual has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

52. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual Plaintiff often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for

unduly duplicative litigation resulting in inconsistent judgments pertaining to Liberty Mutual's policies and practices. There will be no difficulties in managing this action.

53. In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CAUSES OF ACTION

## COUNT I

**Breach of Contract –**

**Violation of the Covenant of Good Faith and Fair Dealing**

**(On Behalf of Plaintiff and the Putative Class)**

54. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

55. Plaintiff and the members of the putative class purchased insurance contracts from Liberty Mutual and performed their contractual obligations thereunder.

56. Liberty Mutual owed Plaintiff and the members of the putative class a duty of good faith and fair dealing by virtue of their contractual relationship.

57. Under the standard contractual language in its policies it issued, Liberty Mutual had the discretion to make voluntary downward premium adjustments based on changed circumstances used to calculate the premium.

58. Plaintiff and the members of the putative class had a reasonable expectation that Liberty Mutual would exercise this discretion fairly and in good faith, without depriving Plaintiff and the members of the putative class of their right to have the premiums collected for their insurance coverage limited to no more than a fair rate of return, and to have that rate adjusted if it became excessive.

59. Liberty Mutual's failure to return sufficient premiums has violated the legitimate expectations of Plaintiff and the members of the putative class of having premiums collected for their insurance coverage that are limited to no more than a fair rate of return, and to have that rate adjusted if it became excessive.

60. Liberty Mutual's conduct has thereby deprived Plaintiff and the members of the putative class of one of the key benefits of their contracts and constitutes a willful violation of the obligation of good faith and fair dealing owed for the purpose of unfairly maximizing revenue from premiums paid by Plaintiff and members of the putative class.

61. In addition, Liberty Mutual gave more weight to its own interests than to the interests of its policyholders. This conduct violated the higher standard of good faith and fair dealing to which insurers are held due to the special relationship existing between insurer and insured, which is characterized by elements of public interest, adhesion, and fiduciary responsibility.

62. Liberty Mutual consciously and deliberately acted with a lack of good faith, thereby disappointing the reasonable expectations of Plaintiff and the members of the putative class that premiums collected for their insurance coverage would be limited to no more than a fair rate of return and would be adjusted if they became excessive.

63. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Liberty Mutual's unlawful conduct.

## COUNT II

**Unjust Enrichment/Quasi-Contract**

**(On Behalf of Plaintiff and the Putative Class)**

64. Plaintiff pleads this Count in the alternative to her other Counts herein.

65. As a result of Liberty Mutual's failure to provide adequate refunds to its customers as described herein, Liberty Mutual has been unjustly enriched.

66. Liberty Mutual was enriched under such circumstances that it cannot conscientiously retain its gain at Plaintiff's and the putative class's expense.

67. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Liberty Mutual's unlawful conduct.

## COUNT III

### Violation the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (On Behalf of Plaintiff and the Putative Class)

68. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

69. Plaintiff and Liberty Mutual are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

70. The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

71. By committing the acts and practices alleged herein, Liberty Mutual has engaged in unfair business acts and practices in violation of the UCL.

72. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims. Liberty Mutual has violated the UCL's proscription against unfair business practices by, among other things: failing to fully refund premiums with full knowledge of the amount and extent of their excess and the fact that they are not based on an accurate assessment of risk, and failing to disclose the fact that it is earning excessive profits, or the amount of those profits.

73. There is no societal benefit from Liberty Mutual's conduct—only harm to consumers. Liberty Mutual has engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

74. California has a longstanding public policy limiting an insurer's ability to impose rates in excess of a fair rate of return on the insured risk that is reflected in various statutes and regulations.

75. Liberty Mutual's conduct in collecting and retaining premiums that have become excessive in light of the unforeseen pandemic-related reduction in driving violates this vital public policy and the intent of the statutes and regulations designed to ensure that the rates collected by insurers relate to the risk insured and are limited to a fair rate of return.

76. There were reasonably available alternatives to further Liberty Mutual's legitimate business interests, other than the conduct described herein.

77. The injury caused by Liberty Mutual's failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund would be required to correct its unfair windfall just for the time period from mid-March through the end of April 2020.

78. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Liberty Mutual's conduct in violation of the UCL. Plaintiff and the members of the putative class lost money or property and suffered injury in fact because Liberty Mutual collected and retained, and continues to collect and retain, premiums in excess of the limitations imposed by California public policy, which rightfully belong to Plaintiff and the putative class.

79. Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of Liberty Mutual.

80. Plaintiff therefore request that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative class, prays for relief as follows:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B. The appointment of Plaintiff as class representative and his counsel as class counsel;

C. A declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

D. An injunction against Defendant from engaging in the unlawful practices complained of herein;

E. Awarding Plaintiff and the members of the putative class their damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, and any other damages provided under relevant laws;

F. Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendant from its unjust enrichment;

G. An order awarding Plaintiff and the class attorneys' fees, costs, and expert costs;

H. An order awarding Plaintiff and the members of the putative class pre-judgment and post-judgment interest, as allowed by law; and

I. Such further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 1, 2022          By:     *s/Manfred P. Muecke*

Manfred Muecke (CA SBN: 222893)
mmuecke@manfredapc.com
**MANFRED, APC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Facsimile: (619) 550-4006

Matthew H. Morgan*
morgan@nka.com
Robert L. Schug (CA SBN: 249640)
schug@nka.com
Chloe A. Raimey
craimey@nka.com
**NICHOLS KASTER, PLLP**
4700 IDS Center
80 S. 8th Street
Minneapolis, MN, 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

Ryan F. Stephan*
rstephan@stephanzouras.com
James B. Zouras*
jzouras@stephanzouras.com
Teresa M. Becvar*
tbecvar@stephanzouras.com
Paige L. Smith*
psmith@stephanzouras.com
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile: (312) 233-1560

David A. Neiman*
dneiman@rblaw.net
**ROMANUCCI & BLANDIN LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Telephone: (312) 458-1000
Facsimile: (312) 458-1004

*Pro hac vice application forthcoming*

Attorneys for Plaintiff Sarah Blain and the putative class.