UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BLAIN, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>                               Defendant. | Case No.:  22-cv-0970-AJB-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**(Doc. No. 15)** |

Presently pending before the Court is Defendant Liberty Mutual Fire Insurance Company's ("Liberty Mutual") motion to dismiss Plaintiff Sarah Blain's Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 15.) Plaintiff filed an opposition to the motion to dismiss, (Doc. No. 20), to which Liberty Mutual replied, (Doc. No. 21).

Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss Plaintiff's Complaint.

///

///

1

## I.    BACKGROUND[1]

Plaintiff has been, and remains, a Liberty Mutual policy holder at all times relevant to this lawsuit. (Complaint ("Compl."), Doc. No. 1, ¶ 33.)  The time period relevant to this lawsuit is from March 1, 2020, to the present. (*Id.* ¶ 44.) Beginning in March 2020, California began implementing various mandates, including "stay-at-home" orders, to combat the COVID-19 pandemic. (*Id.* ¶ 2.) These measures resulted in reduced driving across the state which respectively lowered the number of claims likely to be paid by automobile insurance providers, such as Liberty Mutual. (*Id.* ¶ 19.) In light of the decreased traffic volume, Plaintiff alleges Liberty Mutual collected excessive premiums, which led to a substantial windfall at the expense of its customers and failed to act in good faith when exercising its discretion to adjust the premiums charged to Liberty Mutual customers. (*Id.* ¶¶ 23, 29, 36.)

In April 2020, Liberty Mutual announced it would issue a 15% refund to all auto insurance policyholders for two months' worth of premiums. (*Id.* ¶ 30.) From June 2020 through May 2021, Liberty Mutual continued to refund policyholders at a rate of 5% for that twelve-month period. (*Id.* ¶ 31.) Plaintiff concedes she received premium refunds in both 2020 and 2021. (*Id.* ¶ 34.) The issue instead, as Plaintiff alleges, is that the distributed refunds of 15% were inadequate, and that she and other class members should have received "at least a 30% average refund of paid premiums" to offset the unfair windfall enjoyed by Liberty Mutual from mid-March through the end of April 2020 due to the COVID-19 pandemic. (*Id.* ¶ 4.) Plaintiff further alleges that the subsequent refunds of 5% were similarly inadequate, though does not indicate what an appropriate amount would have been for that timeframe. (*Id.* ¶ 5.)

---

[1] The facts incorporated herein are taken from Plaintiff's Complaint and are construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Plaintiff contends that under the applicable "CHANGE" provision of the Liberty Guard Auto Policy, Liberty Mutual retained contractual discretion to make downward premium adjustments based on changed circumstances at any point during the coverage term, and that, in the case of Plaintiff and the members of the putative class, Liberty Mutual failed to exercise this discretion in good faith during the COVID-19 pandemic. (*Id*. ¶¶ 25–27, 35–36.)

Plaintiff asserts three claims against Liberty Mutual: (1) breach of contract under the implied covenant of good faith and fair dealing; (2) unjust enrichment; and (3) violation of California's Unfair Competition Law ("UCL") under its unfairness prong. (*See* Compl.) Liberty Mutual filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), asserting the Court lacks subject matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) asserting that Plaintiff's Complaint fails to state a claim for which relief can be granted. (Doc. No. 15.)

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. While lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction.") (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable

inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to

an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III.   REQUESTS FOR JUDICIAL NOTICE

While the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Furthermore, Federal Rule of Evidence 201 permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041–42 (S.D. Cal. 2015).

Here, only Liberty Mutual requests judicial notice, and these requests are unopposed.

As part of its motion, Liberty Mutual requests the Court to take judicial notice of the following exhibits in support of its Motion to Dismiss:

### A.   Request for Judicial Notice in Defendant's Support of Motion to Dismiss

First, Exhibit (A), is Bulletin 2020-3, issued by Insurance Commissioner Ricardo Lara ("Lara") on April 13, 2020. (Doc. No. 15-6 at 2.) Exhibit (B) is Bulletin 2020-4, issued by Lara on May 15, 2020. (*Id.* at 2.) Exhibit (C) is Bulletin 2020-8, issued by Lara on December 3, 2020. (*Id.* at 3.) Exhibit (D) is Bulletin 2021-3, issued by Lara on March 11, 2021. (*Id.* at 3.) Exhibits (A)–(D) are public bulletins available on the California Department of Insurance ("DOI") webpage regarding premium refunds in response to the COVID-19 pandemic. Judicial notice is appropriate for records and "reports of administrative bodies." *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954). Therefore, the Court **GRANTS** Liberty Mutual's request for judicial notice of Exhibits (A)–(D).

Next, Liberty Mutual requests judicial notice of Exhibit (E), a press release issued by the DOI, dated March 11, 2021, regarding the overcharge of auto insurance premiums during the COVID-19 pandemic. (*Id.* at 3.) The press release has a public nature and is released through an administrative body. Therefore, the Court **GRANTS** Liberty Mutual's request for judicial notice of Exhibit (E).

Exhibits (F) and (G) are Liberty Mutual's Memorandum Responses to Bulletin 2020-3 and Bulletin 2021-3, respectively. (*Id.* at 3.) Exhibits (F) and (G) are publicly available on the DOI's webpage. Therefore, the Court **GRANTS** Liberty Mutual's request for judicial notice of Exhibit (F) and Exhibit (G).

Exhibit (H) is a brief filed by Lara in *Rejoice! Coffee Co., LLC v. Hartford Financial Services Group., Inc.*, No.: 20-CV-06789-EMC, 2021 WL 5879118 (N.D. Cal. Dec 9, 2021). (Doc. No. 15-6 at 4.) The Court may take judicial notice of court filings. *See Rowland v. Paris Las Vegas*, No. 3:13-CV-02630-GPC-DHB, 2014 WL 769.93, at *2 (S.D. Cal. Feb. 25, 2014) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)). However, "[w]hile the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents . . . are not." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Therefore, the Court **GRANTS** Liberty Mutual's requests for judicial notice of Exhibit (H) for the stated purpose that these documents exist.

Exhibit (I) is Liberty Mutual's Rate Filing for its LibertyGuard Personal Automobile Policy Program with the DOI to become effective January 1, 2020. (Doc. No. 15-6 at 4.) This filing is publicly available through the National Association of Insurance Commissioners' ("NAIC") online System for Electronic Rates and Forms Filing ("SERFF") webpage. Exhibit (J) is a template letter from Lara regarding premium refunds in response to the COVID-19 pandemic. (*Id.* at 4.) Liberty Mutual discovered the template in connection with a news article that was published by ABC 10 News on September 30, 2022. (*Id.*) Exhibit (K) is Public Notice #2022-39, issued by the DOI, regarding Insurance

Companies Rate Filing. (*Id.* at 4.) However, the Court does not rely on these documents in reaching its conclusion below. Accordingly, the Court **DENIES AS MOOT** Plaintiff's requests for judicial notice as to these exhibits.

**B.     Request for Judicial Notice in Declaration of Randall Lawrence-Hurt in Support of Defendant's Motion to Dismiss**

Additionally, Liberty Mutual requests judicial notice for the following documents which are incorporated in the Declaration of Randall Lawrence-Hurt in support of Liberty Mutual's Motion to Dismiss as Exhibits (A)–(D). (Doc. No. 15-1.) Exhibits (A)–(D), as incorporated in the Declaration, are Plaintiff's auto insurance policy as issued by Liberty Mutual beginning in 2019 until 2023. (*Id.* at 2.) There is no dispute between the parties over the policy records. Therefore, the Court **GRANTS** Liberty Mutual's request for judicial notice of Exhibits (A)–(D) as incorporated in the Declaration of Randall Lawrence-Hurt.

**C.     Request for Judicial Notice in Support of Reply in Support of Motion to Dismiss**

Lastly, Liberty Mutual filed an additional request for judicial notice on December 02, 2022. (Doc. 21-1.) This second request for judicial notice includes three exhibits, all of which are publicly available through the online NAIC SERFF webpage. (*Id.* at 2.)

First, Exhibit (A) is the Rate Filing cover page for Allstate Northbrook Indemnity Company's ("Allstate") California Private Passenger Automobile Line of Insurance with the DOI. (*Id.*) Exhibit (B) is the Rate Filing Questionnaire submitted by Allstate to the DOI. (*Id.*) Finally, Exhibit (C) is Allstate's Supplemental Exposure and Premium Template for COVID Impacted Lines submitted to the DOI. (*Id.*) However, the Court does not rely on these documents in reaching its conclusion below. Accordingly, the Court **DENIES AS MOOT** Plaintiff's requests for judicial notice as to these exhibits.

**IV.     DISCUSSION**

Liberty Mutual moves to dismiss Plaintiff's claims on the following grounds: (1) Plaintiff fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) for each

allegation included in the Complaint; (2) the DOI has exclusive jurisdiction over Plaintiff's claims or, in the alternative, the Court should defer to the DOI's primary jurisdiction; (3) Plaintiff's claim for injunctive relief lacks factual information to support Article III standing; and (4) Plaintiff's equitable claims are precluded by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). In addition to challenging the merits of each of Plaintiff's claims, Liberty Mutual contends Plaintiff's case should be dismissed on grounds of equitable abstention. (Doc. No. 21 at 10.)

### A.    Exclusive Jurisdiction

Liberty Mutual first argues the DOI has exclusive jurisdiction over Plaintiff's claims—specifically over the ratemaking conduct at issue—pursuant to Section 1860.1(c) of the California Insurance Code. (Doc. No. 15 at 17–18.)[2] Liberty Mutual characterizes Plaintiff's claims as a challenge to the reasonableness of rates that were preapproved by the DOI prior to the COVID-19 pandemic and that such claims "unlawfully infring[e] upon the Commissioner's exclusive jurisdiction" of rate-setting. (*Id*. at 17.) Liberty Mutual contends that under Section 1860.1, courts do not allow claims challenging insurance practices if the conduct relates to ratemaking or charging of pre-approved rates. (*Id.* at 18.) Liberty Mutual argues this principle applies to Plaintiff's challenge on the adequacy of refunds on pre-approved premium rates. (*Id.*)

Plaintiff disputes that her claims are precluded by California's insurance rate approval process. (Doc. No. 20 at 10.) Specifically, Plaintiff argues her claims are not directed at filed, pre-approved rates, but rather challenge the unfair application of the pre-approved rates. (*Id*.)

Section 1860.1 of the California Insurance Code states: "No act done, action taken, or agreement made pursuant to the authority conferred by this chapter shall constitute a

---

[2] Liberty Mutual's subject matter jurisdiction challenge is a 12(b)(1) facial attack. *See Safe Air for Everyone*, 373 F.3d at 1039 ("[i]n a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."). The Court will accept Plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leite*, 749 F.3d at 1121.

8

violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enact which does not specifically refer to insurance."

As noted by Plaintiff, several California district courts and the California Insurance Commissioner have rejected Liberty Mutual's argument. *See Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 837 (N.D. Cal. Jan. 20, 2022); *Rejoice! Coffee Co.*, 2021 WL 5879118, at *4; *Boobuli's LLC v. State Farm Fire & Cas. Co.*, 562 F. Supp. 3d 469, 486 (N.D. Cal. 2021); *Drawdy v. Nationwide Ins. Co. of Am.*, No. 2:22-cv-00271-JAM-KJN, 2022 WL 3020050, at *2 (E.D. Cal. July 29, 2022) (adopting the exclusive jurisdiction analysis of *Day*, *Rejoice!*, and *Boobuli's*); *Torrez v. Infinity Ins. Co.*, No. 2:22-cv-05171-SVW-JC, 2022 WL 6819848, at *2–4 (C.D. Cal. Oct. 11, 2022) (preliminarily agreeing that plaintiff's UCL claim does not fall under the exclusive jurisdiction of the Insurance Commissioner but using the court's discretion to abstain from reaching the merits of the case). The Court finds these cases persuasive and agrees with the detailed exclusive jurisdiction analysis in *Day*, *Rejoice!*, and *Boobuli's*. *See* 580 F. Supp. 3d at 837 (holding plaintiff's claims challenging GEICO's application of its approved rate plan during the COVID-19 pandemic "are not within the Insurance Commissioner's exclusive jurisdiction and thus not immunized by § 1860.1"); 2021 WL 5879118, at *3–8 (no immunity to claims challenging premium credits during COVID-19); 562 F. Supp. 3d at 477–85 (same). Moreover, the Court finds persuasive that in *Rejoice!*, a brief was filed by the Insurance Commissioner in which he states that Section 1860.1 does not preclude insurance premium rates claims from being raised in the courts. *Rejoice!*, 2021 WL 5879118, at *6.

Based on the foregoing, this Court too finds that Plaintiff's challenge is to the application of approved rates, not to the rates themselves, and therefore does not fall within the Insurance Commissioner's exclusive jurisdiction.

As such, Liberty Mutual's motion to dismiss Plaintiff's claims on this ground is **DENIED**.

///

///

**B.      Primary Jurisdiction**

Liberty Mutual next asserts, in the alternative, that the DOI's primary jurisdiction should result in a stay or dismissal without prejudice of Plaintiff's claims. (Doc. No. 15 at 24–25.) Specifically, Liberty Mutual argues that a ruling in this case would require the Court to reset insurance rates by "engaging in the sort of complex policy analysis and technical actuarial calculations that courts are ill-equipped to undertake," (*id.* at 20), and that such determinations are better left to "the expertise of the Department of Insurance[,]" (*id.* at 5 (quoting *Day*, 580 F. Supp. 3d at 847)). Liberty Mutual asks the Court to "determine that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry." (*Id.* (quoting *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 760 (9th Cir. 2015)).)

In opposition, Plaintiff relies partly on the Commissioner's Brief in response to *Rejoice!*. (Doc. No. 20 at 18.) Namely, Plaintiffs assert "the Commissioner has opined that cases like this are well-suited for litigation . . . even though the Department is still 'actively evaluating whether the insurance industry has issued sufficient refunds,'" (*id.* (citing Doc. No. 20-2 at 2)), and that because this case questions the misapplication of Liberty Mutual's approved rates, the Court need not engage in any "complex policy, or to determine past or future rates[,]" (*id.*). The Court agrees the Commissioner has acknowledged that cases challenging insurance matters not related to rate-making are well-suited for litigation and that "an administrative agency's interpretation of statutes regulating the extent of its power and responsibilities is entitled to a measure of respect." *Villanueva v. Fid. Nat'l Title Co.*, 11 Cal. 5th 104, 132 (2021) (citing *Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 937 (2004) (finding no abuse of discretion when trial court declined to refer the case to Commissioner based on Commissioner's amicus curiae brief)).

In fact, the Eastern District of California recently decided a case similar in fact and referred the case to the DOI through an application of the doctrine of primary jurisdiction. *Drawdy*, 2022 WL 3020050, at *3. However, this case is distinguishable from *Drawdy*

because the plaintiff in *Drawdy* did not offer an explanation to the court as to why the case was better suited for adjudication rather than an administrative determination. *Id.* at *3. Here, Plaintiff has proffered an argument for adjudication over administrative determination, and the Court is swayed by Plaintiff's explanation. (Doc. No. 20 at 17–20.)

Specifically, the Court is persuaded by Plaintiff's argument that a dismissal of the case would leave policyholders with no relief because the Commissioner's authority to order refunds has been called into question. (Doc. No. 20 at 19 (citing *State Farm Gen. Ins. Co. v. Lara*, 71 Cal. App. 5th 148, 188–94 (2021)).) Additionally, the Commissioner has expressly stated that although a "review of the sufficiency of the refunds is ongoing[,] [it] in no way precludes this Court from adjudicating a UCL claim against an insurer." *Rejoice!*, 2021 WL 5879118, at *8. As opined by the Ninth Circuit, "common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana*, 783 F.3d at 761. Although the Commissioner has shown some interest in the issue of adequate premium refunds, the express permission for adjudication of such claims indicates a willingness to relinquish the matter into the judicial system.

The questioning of the Commissioner's authority in *Lara*, coupled with the Commissioner's own statements regarding the authority of the courts to adjudicate the type of claims presently at bar, persuades the Court that even if Plaintiff's claims were brought before the DOI, it is likely the case would ultimately return to this Court, creating an unnecessary detour that would not "enhance court decision-making and efficiency by allowing the court to take advantage of administrative expertise." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1051 (9th Cir. 2000); *Astiana*, 783 F.3d at 760 (judicial efficiency is paramount to the primary jurisdiction doctrine). It is on this point that the Court respectfully disagrees with the Eastern District's application of the doctrine of primary jurisdiction that resulted in the referral of a case that challenged the sufficiency of premium refunds issued to auto insurance policy holders in response to the COVID-19 Pandemic to the DOI. *See Kurshan v. Safeco Ins. Co. of America*, No. 2:22-CV-00225-

DAD-AC, 2023 WL 1070614, at *7 (E.D. Cal. Jan 27, 2023) (relying on primary jurisdiction doctrine to grant motion to dismiss and refer Plaintiff's claims challenging the adequacy of auto insurer's premium refunds in light of COVID-19 pandemic to DOI).

As discussed above, the Court finds Plaintiff's challenge is to Liberty Mutual's application of approved rates, not to the rates themselves, and therefore will not require the Court to partake in any complex calculations that would require the expertise of the DOI. Furthermore, the Court respects the viewpoint of Commissioner Lara in the amicus curiae brief responding to *Rejoice!*, and finds it is well within the Court's purview to determine the case at bar.

For the foregoing reasons, the Court declines to apply the primary jurisdiction doctrine. Liberty Mutual's motion to dismiss Plaintiff's claims on this ground is **DENIED.**

### C.   Article III Standing

Liberty Mutual next asserts Plaintiff lacks Article III standing to properly seek an injunction because Article III standing requires that the "threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient," and Plaintiff "cannot plead any fact establishing a sufficient likelihood of repetitive harm." (Doc. No. 15 at 26–27 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations omitted)).) Plaintiff, in her opposition, does not address Liberty Mutual's argument regarding Article III standing for purposes of seeking an injunction. (*See generally* Doc. No. 20.) The Court interprets Plaintiff's silence on the matter as conceding that she cannot allege a likelihood of repeated injury. *Lopez v. Cnty. of Los Angeles*, No. 3:15-cv-03804-THE, 2016 WL 54123 at *2 (N.D. Cal. 2016) (failure to oppose is implicit consent to the merits of the arguments asserted).

Furthermore, the State of California terminated all "stay-at-home" orders as of June 15, 2021,[3] and Plaintiff's claims are premised on the factual allegation that the issuance of

---

[3] "Current Safety Measures", COVID.19.CA.GOV (last updated Aug. 15, 2022), https://covid19.ca.gov/safely-reopening/.

these "stay-at-home" orders is what led Liberty Mutual to an unfair windfall and ultimately caused Plaintiff to be injured. (Doc. No. 1 at 5.) Therefore, Plaintiff cannot reasonably plead that the expired "stay-at-home" orders present a likelihood of future harm and so, granting leave to amend as to this aspect of Plaintiff's claim would be futile. *Kurshan*, 2023 WL 1070614, at *5 (leave to amend claim for injunctive relief futile when Plaintiff's injury is tied to inactive stay-at-home orders); *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (noting that leave to amend need not be granted where amendment would be futile).

Therefore, the Court finds Plaintiff lacks Article III standing to seek injunctive relief and Plaintiff's claim for injunctive relief is **DISMISSED WITHOUT LEAVE TO AMEND.**

### D.      Doctrine of Equitable Abstention

Liberty Mutual next asserts the doctrine of equitable abstention precludes the entirety of Plaintiff's claims. (Doc. No. 21 at 10.) Specifically, Liberty Mutual argues the claims of this case "demand the Court engage in a highly technical rate-setting analysis." (*Id.*)

The doctrine of equitable abstention "gives courts discretion to abstain from deciding a UCL claim." *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 784 (N.D. Cal. 2011). The doctrine "applies in rare instances." *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1082 (N.D. Cal. 2013). Courts may abstain under this doctrine if: "(1) resolving the claim requires 'determining complex economic policy, which is best handled by the legislature or an administrative agency;' (2) 'granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress;' or (3) 'federal enforcement of the subject law would be more orderly, more effectual, less burdensome to the affected interests.'" *Wehlage*, 791 F. Supp. 2d at 784–85 (quoting *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007)).

///

22-cv-0970-AJB-DEB

The Court is persuaded that this case will not require it to determine complex economic policy better handled by an administrative agency. As discussed above, the California Insurance Commissioner filed a brief in *Rejoice! Coffee Co.*, Case No. 20-cv-06789-EMC (N.D. Cal.), stating "Section 1860.1 does not bar a private litigant from enforcing UCL claims involving excessive premiums, unfair practices, or misapplication of approved rates." (Doc. No. 23-2 at 12.) The Insurance Commissioner thus concluded that "a UCL action that challenges an insurer's refusal to adjust its premiums in response to circumstances caused by the pandemic" does not fall within the Commissioner's exclusive jurisdiction. (*Id.* at 15.) The Court thus also declines to find that the issues in this case would be better handled by an administrative agency. Moreover, the Court will not be required to determine "complex economic policy." Plaintiff is not asking the Court to engage in ratemaking, but rather to determine whether a refusal to adjust premiums was "unfair" conduct. (*See* Doc. No. 23 at 16–17.) This question is firmly within the Court's purview. Therefore, the Court declines to apply the doctrine of equitable abstention here, *see Day*, 2022 WL 17825119, at *1, and Liberty Mutual's motion to dismiss on this ground is **DENIED.**

Because the Court holds it has subject matter jurisdiction over Plaintiff's claims, the Court proceeds to evaluate each of the claim-specific arguments that Liberty Mutual makes for dismissal.

### E.    Breach of Contract – Implied Covenant of Good Faith and Fair Dealing

Turning to the merits of Plaintiff's claims, Liberty Mutual first argues Plaintiff's allegation of breach of the implied covenant of good faith and fair dealing must fail because Plaintiff does not identify any express contract provision that has been violated. (Doc. No. 15 at 27.)  Plaintiff responds it is not necessary for a breach of the implied covenant of good faith and fair dealing to be tied to an express provision contained within the contract. (Doc. No. 20 at 32.) The purpose of the implied covenant of good faith and fair dealing is to ensure that the act of one contracting party does not prevent the other party from enjoying the benefits of the contract, and to require that the act relate to an express provision

14

included in the contract would render the entire covenant of good faith and fair dealing moot. (*Id.* (citing *Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, No. 08CV1595 BEN BGS, 2011 WL 1898600, at *4 (S.D. Cal. May 19, 2011)).)

The implied covenant of good faith and fair dealing is "implied by law in every contract" and "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits actually made." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000). The California Supreme Court has explained that courts "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349–50. Therefore, the covenant cannot contradict the express terms of a contract. *See Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (holding "implied terms should never be read to vary express terms"). However, "[w]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Shirley v. L.L. Bean, Inc.*, No. 18-cv-02641-YGR, 2019 WL 1205089, at *3 (N.D. Cal. Mar. 14, 2019). Plaintiff's implied covenant claim here is based on Liberty Mutual's alleged failure to exercise, in good faith, the discretion granted to it under the insurance contract between the parties. Thus, Plaintiff's failure to identify an express contract provision does not defeat her claim.

Liberty Mutual next contends Plaintiff is attempting to use the covenant of good faith and fair dealing to impose a duty contrary to what Plaintiff expressly agreed to in her insurance policy contract. (Doc. No. 15 at 27.) Specifically, Liberty Mutual argues the contract expressly requires Liberty Mutual to collect insurance premiums from Plaintiff, subject to the terms of her policy agreement. (*Id.*) Plaintiff responds the implied covenant of good faith and fair dealing can be breached "where one party is invested with a discretionary power affecting the rights of another." (Doc. No. 20 at 30 (quoting *Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 252 (2019)).) Specifically, Plaintiff argues Liberty Mutual had contractual discretion to adjust policy premiums, which is demonstrated by the actual issuance of refunds, but failed to exercise its discretion

adequately by offering insufficient refunds. (Doc. No. 20 at 31.) Plaintiff continues that Liberty Mutual's failure to make adequate premium adjustments in response to COVID-19 "frustrated policyholders' legitimate expectations that their premiums would accurately reflect the risk that Liberty Mutual faced and that the company would not obtain an unfair windfall." (*Id.*) Plaintiff further contends she is not attempting to change the express terms of the insurance contract because her claims focus on Liberty Mutual's discretion to act in good faith in accord with policyholder expectations. (*Id.* at 33.)

The Court agrees with Plaintiff. That Liberty Mutual is not *required* to make a downward adjustment does not defeat Plaintiff's breach of covenant claims. Plaintiff's claim is not simply that Liberty Mutual charged premiums calculated pursuant to approved rates, it is that Liberty Mutual applied the approved rate during changed circumstances, when it should have used its discretion,[4] in good faith, to make the appropriate adjustments.[5] *See Boobuli's*, 562 F. Supp. 3d at 486; *cf. Day*, 580 F. Supp. 3d. at 841 (dismissing implied covenant claim with leave to amend where the contract provision cited by the plaintiff did not give GEICO the power to make voluntary downward premium adjustments, but acknowledging "that does not mean that GEICO does not possess the inherent discretionary power" to make such downward adjustments).

Based on the foregoing, Liberty Mutual's motion to dismiss Plaintiff's first claim for violation of the implied covenant of good faith and fair dealing is **DENIED**.

---

[4] The Court acknowledges Liberty Mutual's reliance on *Roby v. Liberty Mutual Personal Insurance Co.*, 20 C 6832, 2022 WL 204610, at *7 (N.D. Ill. Jan. 24, 2022), but finds it unpersuasive. (Doc. No. 15 at 37.) As discussed herein, the Court finds Liberty Mutual retained the discretion to adjust premiums based on circumstances such as the COVID-19 pandemic. Furthermore, *Roby* discusses the affairs of Illinois state law and is not binding on this Court.

[5] Liberty Mutual contends Plaintiff must show that her "reasonable expectations" were not met, *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal. App. 3d 1371, 1395 (1990), and that it is unreasonable of Plaintiff to expect that Liberty Mutual should not receive any profit from its insurance contracts. (Doc. No. 15 at 29.) However, this is a misstatement of Plaintiff's allegations. Nowhere in Plaintiff's Complaint or subsequent filings does Plaintiff allege that Liberty Mutual should have relinquished all profit. Instead, Plaintiff alleges the profit collected by Liberty Mutual, as a result of inadequate refunds to the insured, was unreasonable in light of the changed circumstances caused by the COVID-19 pandemic. (Doc. No. 1 at 8.)

### F.    Unjust Enrichment

Under California law, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution'." *Astiana*, 783 F.3d at 762. A court "may construe a cause of action as a quasi-contract claim seeking restitution." *Id.* However, "a plaintiff may not . . . recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012). Unjust enrichment is a quasi-contract claim and depends on the parties not having an express written agreement on the same subject matter. *Sunpower Corp. v. Sunpower Cal., LLC*, No. 21-CV-375-CAB-MSB, 2021 WL 2781245, at *3 (citing *Lance v. Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996)). "The elements of unjust enrichment are 'the receipt of a benefit and the unjust retention of the benefit at the expense of another.'" *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).

First, Liberty Mutual contends California law does not recognize an unjust enrichment claim where there is an existing contract on the same subject and thus, Plaintiff's claim fails. (Doc. No. 15 at 30.) Plaintiff responds that courts have declined to dismiss unjust enrichment claims on this basis. (Doc. No. 20 at 33.)

The Court agrees with Liberty Mutual. "[A]n action based on implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract governing the same subject matter." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). Here, there is no dispute about the existence or validity of the insurance coverage contract between Plaintiff and Liberty Mutual, and Plaintiff does not plead that the contract is unenforceable or void. *See Steward v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159 (S.D. Cal. 2021) (dismissing plaintiff's unjust enrichment claim where there existed a valid express contract); *Day*, 580 F. Supp. 3d at 841 (same); *Saroya v. Univ. of the Pacific*, 503 F. Supp. 3d 986, 998–99 (N.D. Cal. 2020) (dismissing unjust enrichment claim where plaintiff "did not deny the existence or enforceability" of the contract between the parties).

1   Accordingly, Plaintiff's unjust enrichment claim is **DISMISSED WITHOUT**
2   **LEAVE TO AMEND**.

3   **G.    Unfair Business Practice**

4   Plaintiff lastly asserts a violation of the unfair prong of the UCL. (Doc. No. 1 at 15–
5   17.) Plaintiff contends Liberty Mutual's conduct was unfair because Liberty Mutual was
6   fully aware that its charged premiums were excessive, that the premiums were not based
7   on an accurate risk assessment, yet Liberty Mutual did not issue an adequate refund nor
8   did it disclose the excessive profits acquired. (*Id.* at 15.)

9   To state a claim under the unfair prong of the UCL, a plaintiff must plead the conduct
10  is unfair because it either (1) "offends an established public policy" or (2) "is immoral,
11  unethical, oppressive, unscrupulous, or substantially injurious to consumers," and the
12  utility of the conduct is outweighed by the harm to the consumer. *Davis v. HSBC Bank*
13  *Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). "[A] practice may be deemed unfair even
14  if not specifically proscribed by some other law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular*
15  *Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

16  Liberty Mutual puts forth multiple arguments for dismissal: (1) Plaintiff's claim is
17  barred by the UCL safe harbor provision, (2) Plaintiff lacks standing for failure to
18  adequately plead injury, (3) Plaintiff fails to plead unfair conduct on behalf of Liberty
19  Mutual, and (4) Plaintiff fails to establish a lack of legal remedy.

20  **1.    UCL Safe Harbor Provision**

21  First, Liberty Mutual seeks safe harbor protection from Plaintiff's UCL claim due to
22  a statutory obligation, under Cal. Ins. Code § 1861.05, that requires Liberty Mutual to
23  charge its approved rates. (Doc. No. 15 at 31.) Insurers are protected, under Cal. Ins. Code.
24  § 1861.01, from claims related to actions that were made pursuant to ratemaking, but does
25  not extend to actions taken beyond the scope of that authority. *MacKay v. Superior Ct.*,
26  188 Cal. App. 4th 1427, 1450 (2010). The relevant question is whether Plaintiff's claims
27  are directed at the ratemaking authority of the Commissioner or on some other act of the
28  insurer. As discussed above in § IV.A, Plaintiff's claims are related to the alleged unfair

18

conduct of issuing inadequate premium refunds and not a challenge to the Commissioner approved rates. When claims against insurers are not related to the ratemaking process, insurers are not immune from judicial resolution for alleged violations of California's Unfair Competition Law. *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012); *Wahl v. Am. Sec. Ins. Co.*, No. C 08-0555 RS, 2010 WL 4509814, at *3 (N.D. Cal. Nov. 1, 2010).

For the reasoning applied in § IV.A, the Court finds that Plaintiff's claim is not related to ratemaking and thus Liberty Mutual cannot seek refuge from Plaintiff's UCL claim under a theory of safe harbor.

### 2.   UCL Standing

Next, Liberty Mutual argues Plaintiff lacks standing under the UCL because she fails to adequately state that she suffered an actual, economic injury. (Doc. No. 15 at 32.)

In order to establish standing for a UCL claim, Plaintiff must show she personally lost money or property "as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 330 (2011). The California Supreme Court has explained standing:

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Kwikset Corp.*, 51 Cal. 4th at 323.

Plaintiff responds she "received less than she bargained for because the risk Liberty Mutual insured against was drastically reduced." (Doc. No. 20 at 26.) Specifically, Plaintiff alleges she has experienced economic injury under the UCL by paying "excessive premiums . . . as a result of Liberty Mutual's unfair business practices." (*Id.*) The Court finds this is sufficient to establish standing under the UCL. "Courts in California have

consistently held that benefit of the bargain damages represents economic injury for purposes of the UCL." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *9 (S.D. Cal. May 7, 2020).

Plaintiff alleges "California has a longstanding public policy limiting an insurer's ability to impose rates in excess of a fair rate of return on the insured risk that is reflected in various statutes and regulations." (Doc. No. 1 at 16.) Liberty Mutual's "conduct in collecting and retaining premiums that have become excessive in light of the unforeseen pandemic-related reduction in driving violates this vital public policy and the intent of the statutes and regulations designed to ensure that the rates collected by insurers relate to the risk insured and are limited to a fair rate of return." (*Id*.) As a result of these unfair practices, Plaintiff and other class members have allegedly "lost money or property and suffered injury in fact because Liberty Mutual collected and retained, and continues to collect and retain, premiums in excess of the limitations imposed by California public policy, which rightfully belong to Plaintiff and the putative class." (*Id.*)

Moreover, Liberty Mutual's reliance on *Schwartz v. Provident Life & Accident Insurance Co.*, 216 Cal. App. 4th 607 (2013), and *Tripp v. PHH Mortgage*, No.: ED CV 15-01364-AB (DTBx), 2015 WL 12645023 (C.D. Cal. Aug. 20, 2015), is misplaced. In *Schwartz*, the court found the plaintiff lacked standing for his UCL claim because he was never denied disability coverage, and thus did not suffer economic injury of any kind, unlike the purported class he sought to represent. 216 Cal. App. 4th at 611–12. Here, Plaintiff alleges she suffered the same harm as the purported class, specifically, that they received less than they bargained for because of the drastic reduction in driving-related accidents. Likewise, in *Tripp*, the plaintiff failed to demonstrate she lost money or property as a result of the defendants' conduct. 2015 WL 12645023, at *3. Specifically, the plaintiff's claim that she lost money making loan payments did not constitute a loss because she was legally obligated to make those payments. *Id.* Here, Plaintiff does not base her claim on the premium payments themselves, but rather asserts she and the class suffer from benefit of the bargain losses, which constitutes economic injury cognizable under the UCL.

20

*See Kwikset*, 51 Cal. 4th at 330; *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) (finding standing under the UCL because "[f]our of the six [p]laintiffs allege they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing"); *In re LinkedIn User Privacy Litig.*, No.: 5:12-CV-03088-EJD, 2014 WL 1323713, at *4 (N.D. Cal. Mar. 28, 2014) (finding that benefit of the bargain losses are "sufficient to confer . . . statutory standing under the UCL").

As such, the Court finds that Plaintiff's UCL claim is plausibly pleaded in the Complaint. *See Boobuli's*, 562 F. Supp. 3d at 485.

### 3.    Unfair Conduct

Liberty Mutual further moves to dismiss Plaintiff's claim for violation of the UCL on the basis that Plaintiff failed to allege any unfair conduct by Liberty Mutual. (Doc. No. 15 at 34.) In response, Plaintiff applies Liberty Mutual's alleged conduct to a balancing test and a tethering test to demonstrate unfairness. (Doc. No. 20 at 20.) Under the balancing test, unfairness is determined by weighing "the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1051 (S.D. Cal. 2018). Alternatively, the tethering test simply requires the allegedly unfair conduct "be tethered to some legislatively declared policy." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). The Court finds that, under either test, Plaintiff has alleged unfair conduct sufficient to surpass the relatively low threshold for unfairness at the pleading stage. *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1049 (N.D. Cal. 2018). Specifically, the Court is persuaded by the finding in *Day*, 580 F. Supp. 3d at 837, that allegations of an unjust financial windfall in the context of a global pandemic are sufficient to establish a claim for UCL unfairness against an insurer because of the relation between the conduct and California's public policy that "the cost of insurance be fair, transparent and affordable."

Therefore, the Court finds that Plaintiff sufficiently alleged unfair conduct by Liberty Mutual.

### 4.  Adequate Legal Remedy

Lastly, Liberty Mutual moves to dismiss Plaintiff's equitable claim for violation of the UCL on the basis that Plaintiff failed to establish that she lacks an adequate remedy at law. (Doc. No. 15 at 25.) In support, Liberty Mutual relies on *Sonner*, 971 F.3d at 844, which held a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm . . . ."

Plaintiff responds that *Sonner* is inapplicable here because of a difference in procedural posture. (Doc. No. 20 at 28.) However, a lack of adequate legal remedies must be included in initial pleadings, contrary to Plaintiff's attempt to distinguish *Sonner* based on the stage of the litigation. (*Id.*) Regardless of the stage of the litigation, this District has consistently ruled that the plaintiff must state they lack an adequate remedy at law when raising equitable claims since *Sonner* was decided in 2020. *See Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1140 (S.D. Cal. 2021) ("[T]he Ninth Circuit's recent decision in *Sonner* requires that a complaint seeking equitable relief allege that legal remedies are inadequate.") (citing *Sonner*, 971 F.3d at 844); *Zaback v. Kellogg Sales Co.*, No.: 3:20-CV-00268-BEN-MSB, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020).

While Plaintiff did not adequately plead lack of legal remedy, to do so does not require a disposition of all other claims. *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022) (FRCP 8 expressly allows for pleading in the alternative); *Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (finding no binding precedent that pleading equitable restitution in the alternative to contract damages is improper); *Wildin v. FCA US LLC*, No. 17-cv-02594-GPC, 2018 WL 3032986, at *7 (S.D. Cal. Jun. 19, 2018) (determining availability of UCL remedy at pleading state is premature).[6]

---

[6] The Court's application of *Nacarino, Jeong,* and *Wildin* to the present matter is parallel to an order recently issued in response to a motion to dismiss in a case with remarkably similar allegations. *Caroll v. Progressive Cas. Ins. Co.*, No. 21-cv-09217-FMO, (C.D. Cal. Mar. 6, 2023). (Doc. No. 26-1 at 9.)

Accordingly, the Court **GRANTS** Liberty Mutual's motion to dismiss Plaintiff's UCL claim for failure to state a claim **WITH LEAVE TO AMEND**.

## V.   CONCLUSION

Based on the foregoing, the Court enters the following orders:

- Liberty Mutual's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. (Doc. No. 15.)

- Plaintiff's claim for injunctive relief is **DISMISSED WITHOUT LEAVE TO AMEND.**

- Plaintiff's unjust enrichment claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

- Plaintiff's UCL claim is **DISMISSED WITH LEAVE TO AMEND**.

- Should Plaintiff desire to amend her complaint, she must file a first amended complaint no later than March 24, 2023.

- Liberty Mutual must file a responsive pleading no later than April 7, 2023.

**IT IS SO ORDERED.**

Dated:  March 9, 2023

Hon. Anthony J. Battaglia
United States District Judge

23

22-cv-0970-AJB-DEB